Gerald **PEITROWSKI** and Catherine
Peitrowski, Plaintiffs,

v.

**ACIA, Aetna U.S. Healthcare and
Daimler–Chrysler Corporation,**
Defendants.

No. 99–70295.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 29, 1999.

Brian P. Gijsbers, Allen Park, MI, for
plaintiffs.

Karen M. Kulik, Detroit, MI, Francis R.
Ortiz, Detroit, MI, for defendants.

## OPINION AND ORDER REGARDING CROSS–MOTIONS FOR SUMMARY JUDGMENT

ROSEN, District Judge.

### I. INTRODUCTION

On January 5, 1999, Plaintiffs Gerald

and Catherine Peitrowski[1] commenced this action in Wayne County Circuit Court, State of Michigan, alleging that Defendants unlawfully reduced their payments of benefits under Plaintiff's no-fault automobile insurance policy and his employer-sponsored disability plan upon his receipt of federal Social Security disability benefits. Specifically, although Plaintiff initially received full benefits under both the no-fault policy and the disability plan following his injury in an automobile accident, each of these benefits subsequently was reduced by the full amount of Plaintiff's Social Security benefits. Defendants Aetna U.S. Healthcare and Daimler–Chrysler Corporation[2] removed the case to this Court on January 26, 1999,[3] construing the Complaint as seeking to recover benefits or enforce rights under an employee benefit plan, and asserting that such claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

On July 14, 1999, each of the parties filed a motion for summary judgment. Defendant ACIA argues that a Michigan statute, Mich.Comp.Laws § 500.3109(1), requires the deduction of the full amount of federal Social Security disability benefits from the benefits otherwise payable to Plaintiff under his no-fault automobile insurance policy. For its part, Defendant Aetna contends that it likewise was entitled under the terms of Daimler–Chrysler's ERISA plan to deduct the full amount of Plaintiff's Social Security benefits from the amounts owed to Plaintiff under his short- and long-term disability plans. Plaintiff, while acknowledging each insurer's separate right to deduct Social Security benefits from the amount it must pay, argues that a *full* deduction by *both* insurers amounts to an inequitable "double set-off" and should not be permitted.

On September 23, 1999, the Court held a hearing on the parties' cross-motions. Having considered the arguments of counsel at this hearing, and having reviewed the briefs and supporting documents submitted by the parties, the Court is now prepared to rule on the motions. This Opinion and sets forth the Court's ruling.

## II. *FACTUAL BACKGROUND*

### A. Plaintiff's Injury and Claims for Benefits

On November 8, 1996, Plaintiff Gerald Peitrowski was injured in an automobile accident when another vehicle struck his pickup truck from behind. As a result of this collision, Plaintiff suffered numerous injuries, including a closed-head injury.

Following this accident, Plaintiff, a twenty-five year employee of Defendant Daimler–Chrysler and a participant in his employer's Life, Disability and Health Care Benefits Program (the "Daimler–Chrysler Plan"), applied for "Sickness and Accident" (*i.e.*, short-term disability) benefits under the Daimler–Chrysler Plan, identifying the nature of his disability as "mental." Defendant Aetna paid these short-term disability benefits, in the amount of $612 per week, from December 23, 1996 until April 17, 1997, when Plaintiff returned to work.

On July 25, 1997, however, Plaintiff ceased working for Daimler–Chrysler, and has remained off the job since that date. After taking approximately two weeks of vacation time, Plaintiff again applied for short-term disability benefits under the Daimler–Chrysler Plan, this time identifying the nature of his disability as "nerves." Aetna began payments of these disability benefits on August 14, 1997, again in the amount of $612 per week.

---

1. Because Catherine Peitrowski's claims apparently are entirely derivative of her husband Gerald's claims, these two parties will be jointly referred to as "Plaintiff."

2. Defendant Daimler–Chrysler was Plaintiff's employer, and offered Plaintiff short- and long-term disability insurance coverage under a plan administered by Defendant Aetna. For convenience, these two Defendants will be jointly referred to as "Aetna."

3. Because Defendant ACIA had not yet been served, it did not join in the removal.

Because his short-term disability was scheduled to terminate on August 11, 1998, Plaintiff applied for "Extended Disability" (*i.e.*, long-term disability) benefits under the Daimler–Chrysler Plan. On this application, Plaintiff identified himself as totally disabled, and described the nature of his disability as a "closed head injury." He also stated that "I am not rec[ei]ving Social Security and I've heard nothing from them." Aetna approved this application on August 31, 1998, effective August 12, 1998. Under the Plan, Plaintiff is eligible for long-term disability payments of $2,405 per month, subject to the Social Security setoff discussed below.

During this time, Plaintiff also applied for and received benefits from Defendant ACIA under his no-fault automobile insurance policy. In particular, the ACIA policy provides "personal protection insurance benefits," which cover Plaintiff's medical expenses[4] and his lost income from work he "would have performed during the first 3 years after the date of the accident if he . . . had not been injured." Mich.Comp. Laws § 500.3107(1)(b). Effective August 28, 1997, ACIA began paying work-loss benefits to Plaintiff under his no-fault policy, in the apparent amount of $3545 per month.[5]

Thus, as of August, 1997, Plaintiff was receiving a combined amount of approximately $6,000 per month in disability and no-fault work-loss benefits. Pursuant to Mich.Comp.Laws § 500.3107(1)(b), Plaintiff's work-loss benefits under his ACIA

policy will expire on November 8, 1999, three years after the date of his accident.

**B. The Reduction in Plaintiff's Disability and Work–Loss Benefits Following His Receipt of Social Security Benefits**

In late June or early July of 1998, the federal Social Security Administration ("SSA") notified Plaintiff that he was entitled to receive Social Security disability benefits effective May, 1997.[6] Accordingly, SSA awarded Plaintiff $18,314 in retroactive benefits covering the period from May, 1997 through May, 1998, and Plaintiff began receiving $1,433 per month in Social Security disability benefits.

This award of Social Security benefits affected both Plaintiff's disability benefits under the Daimler–Chrysler Plan and his work-loss benefits under the ACIA no-fault policy. First, the express terms of the Daimler–Chrysler Plan dictate that both "Sickness and Accident" (short-term) and "Extended Disability" (long-term) benefits are to be reduced by the amount of any disability benefits to which Plaintiff "is entitled . . . under the Federal Social Security Act." (Aetna's Motion for Summary Judgment, Ex. A, Daimler–Chrysler Plan at 27, 34.) The Plan further authorizes Aetna to deduct from future benefit payments any amounts previously overpaid to Plaintiff:

> If it is determined that any benefit or benefits paid to an employee under the group insurance referred to in Section I.

4. The record does not disclose whether Plaintiff received reimbursement for medical expenses under the ACIA policy, or whether those expenses were paid by another insurer or plan.

5. Although Defendant Aetna has provided the Court with documentation reflecting the amounts of disability benefits it has paid to Plaintiff and the amounts it withheld following Plaintiff's receipt of Social Security benefits, Defendant ACIA has failed to provide any evidence whatsoever in support of its motion for summary judgment. The Court's determination of amounts paid and withheld by ACIA is based solely on a one-page spreadsheet

attached to Plaintiff's motion. Because the source of this information has not been disclosed, and because neither Plaintiff nor ACIA has given any guidance as to the proper interpretation of this exhibit, the Court is unable to say whether it has correctly gleaned the meaning of this spreadsheet.

6. In its letter to Plaintiff, SSA explained that Plaintiff was deemed to be disabled as of November 8, 1996, the date of his automobile accident, but that he was not eligible for disability benefits until he had been disabled for five consecutive months, which occurred in May, 1997.

[which includes short- and long-term disability insurance] should not have been paid or should have been paid in a lesser amount, written notice thereof shall be given to such employee and he shall repay the amount of the overpayment to the Insurance Company [i.e., Aetna] .... If the employee fails to repay such amount of overpayment promptly, the Insurance Company shall arrange to recover the amount of the overpayment by making an appropriate deduction or deductions from any future benefit payment or payments payable to the employee under the group insurance referred to in Section I....

(*Id.* at 89.)

Aetna construed these provisions as permitting it to recover over $15,000 of the $18,314 Plaintiff received in retroactive Social Security disability benefits as an amount Aetna "overpaid" to Plaintiff between August, 1997, and July, 1998 under Daimler–Chrysler's short-term disability plan. Because Plaintiff retroactively received Social Security benefits covering this period, and because Aetna made full short-term disability payments to Plaintiff during this period without any setoff for Social Security benefits, Aetna believed it was entitled to recover this "overpayment" through suspension or reduction of its post-July 1998 benefit payments to Plaintiff. In addition, Aetna views the Daimler–Chrysler Plan as requiring that Plaintiff's short- and long-term benefits for the period from July, 1998 forward[7] be reduced by the full $1,433 monthly amounts Plaintiff is receiving in Social Security benefits.

Accordingly, upon learning in early July of 1998 that Plaintiff had been awarded Social Security disability benefits, Aetna suspended its payment of short-term dis-

ability benefits from July 6, 1998 through August 11, 1998, thereby recovering roughly $1,500 of its alleged overpayment. In addition, in its August 31, 1998 letter advising Plaintiff that his application for long-term disability benefits had been approved effective August 12, 1998, Aetna notified Plaintiff that his alleged overpayment balance remained in excess of $13,000, requested that he submit a check or money order in this amount, and informed him that his future benefit payments would otherwise be "suspended pending full recovery of the overpayment." (Aetna's Motion for Summary Judgment, Ex. J.) Plaintiff apparently has elected not to remit the alleged overpayment in a single lump sum, and Aetna therefore has suspended payment of his long-term disability benefits until this amount is fully recovered.[8]

At the same time, ACIA also took steps to recover *its* alleged overpayment to Plaintiff under his no-fault auto insurance policy by suspending its payments of work-loss benefits. In support of this action, ACIA does not rely on the terms of the no-fault policy,[9] but instead cites § 3109(1) of Michigan's No–Fault Act, which states that "[b]enefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury." Mich.Comp.Laws § 500.3109(1).

Accordingly, just as Aetna retroactively reduced its disability benefits to Plaintiff by the full amount of Social Security benefits Plaintiff received during the period of overlapping coverage, ACIA also retroactively reduced its work-loss benefits to Plaintiff by the full amount of Social Security benefits Plaintiff received for the peri-

---

7. As noted above, Plaintiff received short-term disability benefits through August 11, 1998, and then became eligible for long-term disability benefits effective August 12, 1998.

8. According to Aetna, its overpayment to Plaintiff will be fully recovered in December, 1999, at which point Plaintiff will receive

monthly long-term disability payments of $972—a base amount of $2,405, less the $1,433 monthly amount he receives in Social Security benefits.

9. Indeed, ACIA has failed to provide a copy of this policy for the Court's review.

od since August 28, 1997, the date ACIA began paying work-loss benefits. Although the record is unclear on this point, it appears that ACIA first learned of Plaintiff's award of Social Security benefits in September of 1998, by which time Plaintiff had received over $19,000 in Social Security benefits that ACIA claimed should be deducted from its past payments of work-loss benefits. In order to recover this alleged overpayment, ACIA suspended its payments of work-loss benefits until June of 1999.[10]

## C. Procedural Background

Plaintiff brought this action in state court on January 5, 1999, challenging the assertions by Aetna and ACIA that each was entitled to deduct the full amount of Plaintiff's Social Security benefits from the amount of benefits it was obligated to pay to Plaintiff. In his Complaint, Plaintiff states that "there appears to be a dispute as to the issue of reimbursement and/or set off of social security benefits received by the plaintiff," (Complaint at ¶ 15), but fails to identify the law governing this dispute. In Aetna's January 26, 1999 Notice of Removal, however, Aetna contends that this matter is governed by ERISA, which preempts any state-law claims Plaintiff might have asserted regarding his entitlement to greater benefits under the Daimler–Chrysler Plan.

On July 14, 1999, each of the parties filed a motion for summary judgment. The parties seemingly agree on the operative facts of this case, and disagree only on the application of the law to those facts. Defendant ACIA argues that Michigan's No–Fault Act unambiguously requires the full deduction of Social Security benefits from any work-loss benefits paid under a no-fault insurance policy, and points to cases decided by the Michigan Court of Appeals holding that this full deduction is unaffected by the fact that these same Social Security benefits might also form

the basis for a reduction in benefits under another policy or plan. Defendant Aetna contends that its deduction of the full amount of Plaintiff's Social Security benefits from the disability benefits it paid to Plaintiff was expressly authorized under the terms of the Daimler–Chrysler Plan, without regard for whether these same Social Security benefits might trigger a reduction in benefits under some other policy or plan. Alternatively, assuming that only one of the two insurers is entitled to deduct Plaintiff's Social Security benefits, or that the total deduction of the two insurers combined may not exceed the amount of those Social Security benefits, Aetna argues that the preemptive effect of ERISA gives it a superior claim to the full deduction.

In his motion, Plaintiff does not dispute that either ACIA or Aetna, standing alone, could properly deduct the entirety of Plaintiff's Social Security benefits from its payment of benefits. Moreover, Plaintiff does not challenge the insurers' efforts to recover alleged overpayments for the period covered by the retroactive award of Social Security benefits, nor does he contest their calculations of those overpayments. Rather, Plaintiff's motions rests solely upon the premise that it would be inequitable to permit a "double setoff" of the full amount of his Social Security benefits by two different insurers. Plaintiff proposes that the Court adopt a rule limiting the amount of any combined setoff of Social Security benefits so that Plaintiff continues to receive the full amount of his pre-injury work income. While conceding the absence of any direct statutory or case-law support for such a rule, Plaintiff nonetheless contends hat his proposed rule would best serve the "intent" of the setoff provisions upon which ACIA and Aetna rely.

---

**10.** Since June, ACIA apparently has resumed payment of work-loss benefits to Plaintiff in the amount of approximately $2,100 per month—a base amount of roughly $3,500, minus the $1,433 monthly amount Plaintiff receives in Social Security benefits. As noted earlier, ACIA's obligation to pay work-loss benefits will terminate on November 8, 1999.

## III. *ANALYSIS*

### A. The Standards Governing the Parties' Motions

Plaintiff, ACIA and Aetna all have moved for summary judgment. Under the relevant Federal Rule, summary judgment is proper " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " Fed.R.Civ.P. 56(c).

Three 1986 Supreme Court cases—*Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)—ushered in a "new era" in the federal courts' review of motions for summary judgment. These cases, in the aggregate, lowered the movant's burden in seeking summary judgment.[11] According to the *Celotex* Court:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

After reviewing the above trilogy, the Sixth Circuit adopted a series of principles governing motions for summary judgment. These principles include:

* Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

* The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

* The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

* The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

* The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989). *See also Nernberg v. Pearce*, 35 F.3d 247, 249 (6th Cir.1994). The Court will apply these standards in deciding the parties' cross-motions for summary judgment in this case.

### B. The Setoff of Social Security Benefits Under the Daimler–Chrysler Plan

█ Turning first to Aetna's claimed entitlement to deduct Plaintiff's Social Security benefits from the short- and long-term disability benefits paid to Plaintiff under the Daimler–Chrysler Plan, there appears to be no dispute that the terms of the Plan authorize such a deduction. Both the provisions governing "Sickness and Accident" (short-term disability) benefits and the terms governing "Extended Disability"

---

11. "Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials." 10A Charles A. Wright, Arthur R.

(long-term disability) benefits expressly state that these benefits are to be reduced by the amount of benefits to which the Plan participant is "entitled ... under the Federal Social Security Act." As noted by Aetna, the summary plan description for the Daimler–Chrysler Plan includes this same language. Moreover, the Plan specifically permits Aetna to recover any overpayment of benefits by suspending or reducing future benefit payments to the Plan participant. Thus, the Court is unable to identify any action by Aetna—with one exception, discussed below—that violated the terms of the Daimler–Chrysler Plan, and Plaintiff does not contend otherwise.[12]

As noted earlier, Plaintiff does not challenge Aetna's authority under the Daimler–Chrysler Plan to reduce his disability benefits by the full amount of his Social Security benefits. In fact, the courts have upheld this practice of deducting Social Security benefits from disability payments against a variety of challenges. *See, e.g., Godwin v. Sun Life Assurance Co.,* 980 F.2d 323, 327 (5th Cir.1992) ("[A]s a general rule, Social Security old age income may be offset against monthly disability payments."); *Lamb v. Connecticut Gen. Life Ins. Co.,* 643 F.2d 108 (3d Cir.) (holding that the offset of disability payments by Social Security benefits does not violate the federal Social Security Act), *cert. denied,* 454 U.S. 836, 102 S.Ct. 139, 70 L.Ed.2d 116 (1981); *Camarda v. Pan Am. World Airways, Inc.,* 956 F.Supp. 299, 310 (E.D.N.Y.1997) ("[E]ither under the summary plan or the Plan itself, Centennial had the right to set off the benefits Camarda received from Social Security."), *aff'd,* 162 F.3d 1147 (2d Cir.1998); *Lopez v. Commonwealth Oil Refining Co.,* 833

F.Supp. 86, 89 (D.P.R.1993) (rejecting the plaintiff's argument that his disability benefits were "vested and nonforfeitable," and thus exempt from offset by Social Security benefits), *aff'd,* 29 F.3d 619 (1st Cir.1994). Thus, the terms of the Daimler–Chrysler Plan calling for the reduction of disability benefits by the amount of a Social Security award are fully enforceable.

Next, Plaintiff apparently concedes Aetna's right to recover excess disability benefits paid to Plaintiff during the period covered by the retroactive award of Social Security benefits. Again, the case law supports Aetna's effort to recover overpaid ERISA disability benefits. For example, in *Cooperative Benefit Adm'rs, Inc. v. Whittle,* 989 F.Supp. 1421 (M.D.Ala.1997), the Court granted summary judgment to the plaintiff ERISA claims administrator, CBA, which sought to recover from defendant Whittle, a plan participant receiving long-term disability benefits, the Social Security benefits received by his wife and children on account of his disability. In so ruling, the Court found that CBA was not estopped from seeking reimbursement of overpaid long-term disability benefits because CBA had merely " 'fronted' or 'advanced' Whittle the full disability benefit— including the portions that would later be recovered by Whittle and his dependents from the Social Security Administration— in return for Whittle's promise to repay the Social Security benefits when received." 989 F.Supp. at 1434.

Plaintiff contests none of these principles of ERISA law. Rather, Plaintiff advances a broader policy-based challenge to Aetna's reduction in benefits *in combination* with ACIA's similar reduction, both based on the same award of Social Security benefits. As Aetna suggests in

Miller, Mary Kay Kane, *Federal Practice & Procedure,* § 2727, at 33 (1993 Supp.).

**12.** With regard to the standards governing this Court's review of Aetna's benefit reduction decision, Aetna contends that the Daimler–Chrysler Plan grants it the discretion to construe the terms of the plan, and that this Court therefore should apply the "arbitrary and capricious" standard of review. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S.

101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989); *Perez v. Aetna Life Ins. Co.,* 150 F.3d 550, 555–56 (6th Cir.1998). Plaintiff does not address the proper standard of review. In any event, the Court need not decide this issue, because it finds that Aetna's interpretation of the Daimler–Chrysler Plan as allowing the setoff of Social Security benefits would withstand review under either the "arbitrary and capricious" or the more stringent "de novo" standard.

its motion, however, any such policy-based prohibition on "double setoffs" of Social Security benefits would leave Aetna's set-off rights fully intact. In particular, Aetna points to the analogous situation of competing coordination-of-benefits ("COB") clauses in ERISA plans and private automobile insurance policies governed by Michigan's No–Fault Act. Where both the ERISA plan and the no-fault policy include COB clauses which purport to shift primary liability to the other insurer, the courts have held that the terms of the ERISA plan must prevail. *See, e.g., Auto Owners Ins. Co. v. Thorn Apple Valley, Inc.*, 31 F.3d 371, 375 (6th Cir. 1994), *cert. denied*, 513 U.S. 1184, 115 S.Ct. 1177, 130 L.Ed.2d 1129 (1995); *CNA Ins. Co. v. Allstate Ins. Co.*, 36 F.Supp.2d 957, 965 (E.D.Mich.1999).

Reasoning by analogy, and recognizing ERISA's broad preemptive effect over state law which otherwise would directly affect the administration of ERISA plans, *see CNA*, 36 F.Supp.2d at 961, the Court believes that the Daimler–Chrysler ERISA plan would be entitled to prevail in any contest with ACIA over the deduction of Plaintiff's Social Security benefits. Thus, even if the Court were able to identify some ERISA-based policy that prohibited "double setoffs" by both an ERISA plan and a private insurer pursuant to state law,[13] Aetna still would be entitled under ERISA to deduct the full amount of Plaintiff's Social Security benefits, and any state law to the contrary would be preempted. Accordingly, the Court conclude that Aetna's right under the Daimler–Chrysler Plan to deduct Plaintiff's Social Security award from his disability benefits is wholly unimpaired by another insurer's effort to use this same award as the basis for its own separate deduction.

█ Finally, although Plaintiff seemingly finds no fault with Aetna's suspension of disability payments until it had fully recovered its overpayment caused by the retroactive award of Social Security benefits, the Court has identified one problematic aspect of this suspension. As noted earlier, the Daimler–Chrysler Plan requires that a plan participant be given notice of and an opportunity to repay any overpayment of benefits *before* the overpayment may be recovered through the suspension or reduction of future benefit payments. (Aetna's Motion for Summary Judgment, Ex. A at 89.) In Aetna's August 31, 1998 letter to Plaintiff approving his application for long-term disability benefits, Aetna noted its overpayment of short-term disability benefits, and advised Plaintiff that payments of long-term disability benefits would be suspended until this overpayment was recovered. (*Id.*, Ex.J.) This letter satisfied Aetna's obligation to give notice before withholding benefits *subsequent* to August 31, 1998.

In this same letter, however, Aetna also noted that it had *already withheld* the first long-term disability payment otherwise owed to Plaintiff, in the amount of $627.10, in partial satisfaction of its overpayment of short-term disability benefits. In addition, in a joint stipulation of facts, Aetna states that it suspended payment of Plaintiff's short-term disability benefits between July 6, 1998 and August 11, 1998, (*id.*, Ex. C, ¶ 10), and other records submitted by Aetna show that these withheld benefits amounted to $1,517.67, (*id.*, Ex. F, at 2). Yet, the record fails to disclose any notice to Plaintiff before Aetna withheld these final short-term disability payments and the initial long-term disability payment. Consequently, the Court concludes that Aetna improperly suspended $2,144.77 in payments to Plaintiff in violation of the terms of the Daimler–Chrysler Plan, and orders that these payments be remitted to Plaintiff.[14]

---

13. As discussed below, however, the Court finds that there is no such ERISA-based policy, as ERISA does not reach the setoff applied by ACIA in this case pursuant to Michigan law.

14. The Court notes that this remedy appears consistent with the Plan provision addressing the recovery of overpayments, which states in part that "no repayment shall be required if notice has not been given within one year

## C. The Setoff of Social Security Benefits Under the ACIA No-Fault Policy

Unlike Aetna, which appeals to the terms of the Daimler–Chrysler Plan to justify its deduction of Plaintiff's Social Security award from his disability benefits, ACIA does not cite the terms of Plaintiff's no-fault automobile insurance policy as the basis for its similar deduction of Plaintiff's Social Security award from its payment of work-loss benefits. Rather, as discussed above, ACIA bases its deduction on § 3109(1) of Michigan's No–Fault Act, which requires that "[b]enefits provided or required to be provided under the laws of ... the federal government *shall be subtracted* from the personal protection insurance benefits otherwise payable for the injury." Mich.Comp.Laws § 500.3109(1) (emphasis added).[15] The Michigan Supreme Court has squarely held that this provision requires the deduction of federal Social Security disability benefits from work-loss benefits otherwise payable under a no-fault auto insurance policy. *Profit v. Citizens Ins. Co.*, 444 Mich. 281, 288, 506 N.W.2d 514, 517 (1993).

■ As with his claim against Aetna, Plaintiff does not challenge ACIA's right, standing alone, to deduct his Social Security benefits from his work-loss benefits.[16] Instead, Plaintiff contends that ACIA's right to deduct is affected, and perhaps overcome, by the fact that Aetna also claims a right to the same deduction. While conceding that no statute or case law directly supports this claim, Plaintiff suggests two possible bases for the result he seeks: (1) that ERISA preempts the right to deduct conferred by § 3109(1) of Michigan's No–Fault Act, and (2) that the intent of the Michigan statute is not served by the "double setoff" taken by the defendant insurers in this case. As discussed below, the Court cannot accept either of these arguments.

Regarding Plaintiff's claim of ERISA preemption, the Court finds no basis for concluding that ERISA reaches the Michigan statute invoked by ACIA. ERISA's preemptive sweep, while admittedly broad, must nevertheless be founded upon *some* aspect of state law that "relate[s] to" an ERISA plan. 29 U.S.C. § 1144(a); *see also Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2388–89, 85 L.Ed.2d 728 (1985). Moreover, ERISA's "saving clause" expressly preserves the states' power to regulate insurance. 29 U.S.C. § 1144(b)(2); *see also Metropolitan Life*, 471 U.S. at 739–40, 105 S.Ct. at 2389.

In this case, the Court simply is unable to identify any way in which the Michigan law at issue, Mich.Comp.Laws § 500.3109(1), relates to an ERISA plan. It cannot matter to an ERISA plan that a state law operates to reduce the amount of benefits paid under a non-ERISA insurance policy which provides coverage completely separate from, and in addition to, the coverage provided under the ERISA plan. More specifically, in this case, the level of disability benefits paid to Plaintiff

---

from the date the overpayment was established and the overpayment was caused solely by [Daimler–Chrysler] or [Aetna] error." (Aetna's Motion for Summary Judgment, Ex. A at 89.) This provision, although not necessarily written with the present situation in mind, arguably was triggered by Aetna's error in suspending payments without prior notice and its failure to recognize this error and notify Plaintiff within a year of its improper suspension of payments in July and August of 1998. Construing the Plan's notice and repayment language against Aetna and in favor of Plaintiff, *see Phillips v. Lincoln Nat'l Life Ins. Co.*, 978 F.2d 302, 311–13 (7th Cir.1992), the Court finds that it prohibits Aetna from

retaining repayments secured through violation of the Plan's notice requirement.

**15.** In turn, Mich.Comp.Laws § 500.3107(1)(b) expressly includes work-loss benefits as part of a no-fault policyholder's "personal protection insurance benefits."

**16.** Likewise, as in his claim against Aetna, Plaintiff does not challenge ACIA's entitlement to recover overpaid work-loss benefits based on the retroactive award of Social Security benefits. Nor does Plaintiff challenge ACIA's calculation of this overpayment, or the mechanism—*i.e.*, suspension of payment—by which ACIA recovered this overpayment.

under the Daimler–Chrysler Plan is entirely determined by reference to the terms of that Plan, and is entirely unaffected by the level of benefits Plaintiff is eligible to receive under any private insurance policies he might hold. Stated differently, the amount of benefits Plaintiff is entitled to receive under the Daimler–Chrysler Plan would remain unchanged even if § 3109(1) had never been enacted. Thus, because the ERISA plan here does not purport to "coordinate" its disability coverage with Plaintiff's coverage under his auto insurance policy, but instead coordinates only with Plaintiff's Social Security benefits, the disability portion of the Daimler–Chrysler Plan is indifferent to state regulation of Plaintiff's auto insurance policy, and § 3109(1) is not preempted.

■ Consequently, Plaintiff's claim against ACIA must rise or fall upon the interpretation of § 3109(1) as a matter of state law.[17] As Plaintiff concedes, the Michigan Court of Appeals has twice construed this provision as requiring the full deduction of Social Security disability benefits from work-loss benefits paid to the insured under a no-fault auto policy, *even where* these same Social Security benefits are used as the basis for a reduction in benefits under a disability plan offered by the insured's employer. *See Minster v. State Farm Mut. Auto. Ins. Co.*, 217 Mich. App. 1, 551 N.W.2d 410 (1996); *Grau v. Detroit Auto. Inter–Insurance Exchange*, 148 Mich.App. 82, 383 N.W.2d 616 (1985). As the *Minster* Court explained in rejecting precisely the same argument made by Plaintiff here:

> Plaintiff argues that permitting defendant [*i.e.*, the no-fault insurer] to offset social security benefits against no-fault work-loss benefits is patently unfair and constitutes an inequitable penalty in light of the controlling ERISA plan, which also required a setoff of social security benefits. Plaintiff further as-

serts that because the decedent [*i.e.*, the insured] paid a higher premium for a noncoordinated benefits no-fault policy, the decedent was entitled to receive more benefits, not less. Plaintiff cites no statutory or case law authority for this proposition, however, and we find no support for it. Our review of plaintiff's no-fault policy reveals that the policy's setoff language applies whether the policy is coordinated or noncoordinated. Moreover, nothing in the language of § 3109(1) or the legislative history evidences a legislative intent to suspend the no-fault act's *mandatory* setoff provisions under any circumstances.

*Minster*, 551 N.W.2d at 412 (footnote omitted).

■ Plaintiff reluctantly acknowledges that *Grau* and *Minster* "appear to be on point," (Plaintiff's Brief in Support of Motion for Summary Judgment, at 2), and these decisions, if followed, plainly defeat Plaintiff's state-law claim against ACIA. Although this Court is not ineluctably bound to accept the rulings of the Michigan Court of Appeals on matters of Michigan law, the Sixth Circuit has instructed that the decision of a state intermediate court "does serve as a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Ziebart Int'l Corp. v. CNA Ins. Cos.*, 78 F.3d 245, 250–51 (6th Cir.1996) (internal quotations and citation omitted).

Plaintiff has failed to identify any "persuasive data" that the Michigan Supreme Court would reject the rulings in *Grau* and *Minster*. Like the plaintiff in *Minster*, Plaintiff here has cited nothing in the language of § 3109(1) or its legislative history that suggests a legislative intent to prohibit "double setoffs" of the same Social Security benefits under both a no-fault policy

---

**17.** The Court notes that this conclusion calls into question the allegation in Aetna's Notice of Removal that Plaintiff's state-law claims are wholly preempted by ERISA. Rather, only the claim against Aetna is governed by ERISA. Nevertheless, the Court has supplemental jurisdiction over the state-law claim against ACIA pursuant to 28 U.S.C. § 1367(a), under what formerly would have been termed the Court's "pendent party" jurisdiction.

and a disability plan. Rather, Plaintiff appeals generally to the inequity of double setoffs, and argues that a setoff under § 3109(1) in this case would not serve that statute's overarching purpose of preventing double recoveries.

Decisions of the Michigan Supreme Court, however, cast doubt on Plaintiff's view that § 3109(1) was enacted primarily to prevent double recoveries. In both *De-Meglio v. Auto Club Ins. Ass'n,* 449 Mich. 33, 47, 534 N.W.2d 665, 671 (1995), and *Popma v. Auto Club Ins. Ass'n,* 446 Mich. 460, 477, 521 N.W.2d 831, 839 (1994), the Court observed that § 3109(1) reflected the Legislature's desire to hold down the cost of no-fault insurance. This purpose is best served by a mandatory setoff of Social Security benefits in all cases, without regard to whether those same benefits form the basis for a setoff under some other policy or plan in some individual cases.

At best, then, the legislative history of § 3109(1) as addressed by the Michigan Supreme Court raises the possibility that the Michigan Legislature never considered the problem of "double setoffs." In that case, the Court must resort to the language of § 3109(1) itself, which is unequivocal and admits of no exception—as recognized in *Minster,* it calls for setoff under all circumstances. Although it is plausible to suggest that the Legislature would not approve of "double setoffs," it is equally plausible to suppose that the Legislature would, on balance, decide that the gains achieved by double setoffs—*i.e.,* broader cost containment—outweigh the disadvantage of reduced benefits, particularly where the persons subject to double setoff still are receiving the full amount of work-loss benefits called for under the No-Fault Act *plus* additional, albeit reduced, benefits under a separate disability plan.

In any event, this Court declines Plaintiff's invitation to jump into any legislative void arguably left by § 3109(1) and write into that statute a limitation that runs directly counter to the unequivocal language of the statute as enacted.[18] This Court readily acknowledges, as did the Court in *Minster,* 551 N.W.2d at 412, that the Michigan statute as applied in this case produces a seemingly harsh result, as it operates to reduce Plaintiff's overall benefits following the award of Social Security benefits.[19] As recognized in *Minster,* however, "[a]ny inequity that exists must be remedied by the Legislature." 551 N.W.2d at 412.[20]

**18.** In particular, the Court sees no basis whatsoever for Plaintiff's proposal that the Court determine the proper setoff amount by reference to Plaintiff's pre-injury income. This position, if adopted, would represent judicial legislating of the highest order.

**19.** In this regard, the Court must respectfully disagree with a portion of the reasoning in *Grau,* in which the Michigan Court of Appeals endeavored to explain how reductions in both work-loss and disability benefits based on a single Social Security award did not truly constitute a "double setoff," but instead merely represented two independent attempts to preclude a double recovery. *Grau,* 383 N.W.2d at 619. This Court fails to see how a double setoff is avoided in *Grau* or here, since every dollar gained in Social Security benefits is counted against both work-loss and disability benefits, resulting in a net loss of one dollar in overall benefits. Nevertheless, the double setoff in this case is a necessary consequence of the combined effects of Michigan law and the terms of the Daimler–Chrysler Plan, and the Court finds no legal basis for

deviating from the express dictates of either state law or the Plan.

**20.** The Court hesitates to pronounce the double setoff in this case "inequitable," as the various "equities" here are complex and do not yield an obvious solution. For example, the Social Security Act itself requires that Social Security disability benefits be offset by the amounts received under state or federal worker's compensation law, so that the injured worker cannot receive more than 80 percent of his pre-injury earnings. *See* 42 U.S.C. § 424a(a). The Supreme Court has explained that Congress enacted this provision in 1965 upon discovering that, in a majority of states, "a typical worker injured in the course of his employment and eligible for both state and federal benefits received compensation for his disability in excess of his take-home pay prior to the disability." *Richardson v. Belcher,* 404 U.S. 78, 82, 92 S.Ct. 254, 258, 30 L.Ed.2d 231 (1971). Congress was concerned that "this situation reduced the incentive of the worker to return to the

## IV. *CONCLUSION*

For the reasons set forth above,

IT IS HEREBY ORDERED that Plaintiffs' Motion for Summary Judgment is DENIED.

IT IS FURTHER ORDERED that Defendant ACIA's Motion for Summary Judgment is GRANTED.

IT IS FURTHER ORDERED that the Motion for Summary Judgment brought by Defendants Aetna U.S. Healthcare and Daimler–Chrysler Corporation is GRANTED, with the exception that Aetna is ordered to remit to Plaintiff $2,144.77 in disability payments withheld in violation of the terms of the Daimler–Chrysler Plan.

job," and responded by amending the Social Security Act to "reduce[ ] the duplication inherent in the programs and at the same time allow[ ] a supplement to workmen's compensation where the state payments were inadequate." 404 U.S. at 83, 92 S.Ct. at 258. Moreover, ERISA expressly authorizes "integration" provisions that offset pension benefits by Social Security payments, reflecting congressional concern that a ban on such provisions "could substantially increase the cost of financing private plans," and that "[e]mployees, as a whole, might be injured rather than aided if such cost increases resulted in slowing down the growth or perhaps even eliminat[ing] private retirement plans." *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 514–15, 101 S.Ct. 1895, 1902, 68 L.Ed.2d 402 (1981) (discussing 29 U.S.C. § 1054(b)(1)(B), (C), and (G), and quoting the legislative history of ERISA).

In this case, Plaintiff notes that the monthly amounts he received in work-loss and short-term disability benefits between August of 1997 and July of 1998—*i.e.*, before any setoffs were applied—actually exceeded his pre-disability income by roughly 14 percent. With the double setoff of Social Security benefits, which will remain in effect until Plaintiff's work-loss benefits terminate on November 8, 1999, Plaintiff's monthly benefit payments have fallen to roughly 88 percent of his pre-disability income. Given the positive effects of setoffs as noted above, it is not for this Court to say whether the results in cases like this one are so inequitable as to warrant a legislative response. The Court also observes that Plaintiff has received precisely the level of benefits promised in both his no-fault policy and the Daimler–Chrysler disability plan; the result here could have been anticipated by reviewing the language of the policy and plan.