**Arnold ISNER, Plaintiff,**

v.

**MINNESOTA LIFE INSURANCE COMPANY,**

and

**Unum Life Insurance Company of America, Defendants.**

**Civil No. 08–13417.**

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 22, 2009.

J. Laevin Weiner, Louis C. Szura, Frank, Haron, Troy, MI, for Plaintiff.

Kevin S. Toll, Sullivan, Ward, Asher & Patton, P.C., Southfield, MI, Sheri B. Cataldo, Sullivan, Ward, Southfield, MI, D. Andrew Portinga, J. Michael Smith, Miller, Johnson, Grand Rapids, MI, for Defendants.

## ORDER ADOPTING REPORT AND RECOMMENDATION

JOHN FEIKENS, District Judge.

This case was referred to United States Magistrate Judge R. Steven Whalen pursuant to 28 U.S.C. § 636(b)(1)(B). There are two pending motions to dismiss this case, one filed by Defendant Minnesota Life Insurance Company ("Minnesota Life"), and one filed by Defendant Unum Life Insurance Company of America ("Unum") (Dkt. 24 & 25). Magistrate Judge Whalen issued a Report and Recommendation on September 23, 2009 (the "Report") (Dkt. 36). The Report recommends dismissing the Complaint against both Defendants for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6).

Plaintiff filed timely Objections to the Report, and Defendants each filed a Response to Plaintiff's Objections (Dkt. 37–39). For the reasons set forth below, the Court will ADOPT the Report, OVERRULE Plaintiff's Objections, and GRANT both Defendants' Motions to Dismiss.

## I. BACKGROUND

### A. Relevant Factual Background

The essential facts in this case are undisputed. Plaintiff, Arnold Isner, had long term disability ("LTD") insurance coverage with Minnesota Life, based upon his employment as an agent for Minnesota Life, and a separate LTD policy with Unum, based upon his employment with Kapnick & Company. Several years after the issuance of these policies, Plaintiff became disabled as a result of Parkinson's Disease. (Amended Complaint ¶¶ 7–13). Plaintiff made claims for LTD benefits under both policies, both claims were approved, and Defendants each paid LTD benefits in the full amount under their respective policies. (*Id.* ¶¶ 16–19). Plaintiff received approximately $2,000 each month from Unum, and $3,000 each month from Minnesota Life. (*Id.* ¶¶ 21–23).

At a later date, Plaintiff began receiving Social Security Disability benefits of approximately $1,600 per month. (*Id.* at ¶¶ 20–21). Thereafter, pursuant to the LTD plan "other income" provisions, each Defendant reduced Plaintiff's LTD benefits by the full amount of his monthly Social Security award. (*Id.* ¶¶ 21–23). Plaintiff's Unum benefits were reduced to approximately $400 per month, and his Minnesota Life benefits were reduced to approximately $1,400 per month. This process, known as "integration" of benefits, caused a net reduction in Plaintiff's LTD benefits of $3,200, representing twice the amount of Social Security benefits he actually received. (*Id.* ¶¶ 24–25). Plaintiff contends this "double-offset" is impermissible under ERISA as a matter of law, as well as under the language and intent of the respective policies. (*Id.* ).

1. The Minnesota Life Group Insurance Policy (Dkt. 25, Ex. A) contains nearly identical language.

### B. The Minnesota Life Policy

The Minnesota Life Certificate of Insurance [1] (Dkt. 25, Ex. B) includes the following relevant provisions:

*SECTION III—BENEFITS*

\*     \*     \*

### C. MONTHLY BENEFIT

To figure the amount of your monthly benefit . . . :

1. Multiply your basic monthly earnings by the benefit percentage [60%] indicated in box 3A of the schedule of benefits.

2. Take the lesser of the amount:

   a. determined in step (1) above; or

   b. of the maximum monthly benefit [$4,000] indicated in box 3A of the schedule of benefits, and

3. **Deduct other income benefits,** listed in this certificate, from this amount. (emphasis added)

\*     \*     \*

### D. MINIMUM MONTHLY BENEFIT

The benefit payable will never be less than $100.00 or 10% of the gross monthly benefit, whichever is greater.

### E. OTHER INCOME BENEFITS

Other income benefits mean those benefits as follows:

\*     \*     \*

5. The amount of disability or retirement benefits under the United States Social Security Act . . . as follows:

a. **disability benefits for which you are eligible** (emphasis added).

\* \* \*

*SECTION V—SOME GENERAL INFORMATION TO KNOW*

\* \* \*

I. DISCRETIONARY AUTHORITY

In making any benefits determination under the policy, we shall have the discretionary authority both to determine your eligibility for benefits and to construe the terms of the policy.

C. **The Unum Policy**

The Unum Policy (Dkt. 24, Ex. A) includes the following relevant provisions:

*BENEFITS AT A GLANCE*

Long Term Disability Plan

\* \* \*

MONTHLY BENEFIT:

60% of monthly earnings to a maximum benefit of $10,000 per month.

**Your payment may be reduced by deductible sources of income and disability earnings** . . . . (emphasis added)

\* \* \*

*CERTIFICATE SECTION*

\* \* \*

When making a benefit determination under the policy, Unum has discretionary authority[2] to determine your eligi-

bility for benefits and to interpret the terms and provisions of the policy.

\* \* \*

*LONG TERM DISABILITY*

Benefit Information

\* \* \*

*How Much will Unum Pay if You Are Disabled?*

We will follow this process to figure your payment:

1. Multiply your monthly earnings by 60%.

2. The maximum **monthly benefit** is $10,000.

3. Compare the answer from Item 1 with the maximum monthly benefit. The lesser of these two amounts is your gross disability payment.

4. Subtract from your gross disability payment any **deductible sources of income.**

The amount figured in Item 4 is your **monthly payment.** (emphasis in original)

\* \* \*

*What are Deductible Sources of Income?*

Unum will subtract from your gross disability payment the following deductible sources of income:

\* \* \*

3. The amount that you, your spouse and your children receive or are enti-

---

**2.** I note that both policies grant discretionary authority to determine Plaintiff's eligibility for benefits, as well as to interpret the terms and provisions of the policies, to the plan administrator. Therefore, should Plaintiff's case survive Defendants' Motion to Dismiss, he would need to demonstrate that Defendants' interpretation is arbitrary and capricious—a highly deferential standard of judicial review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Davis v. Kentucky Finance Cos. Retire-*

*ment Plan*, 887 F.2d 689, 694 (6th Cir.1989). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 292 (6th Cir.2005) (internal quotation marks and citation omitted). In light of the plain language of the policy authorizing each Defendant's integration of Social Security benefits, it is difficult to imagine how their determinations could be deemed arbitrary or capricious.

tled to receive as disability payments because of your disability under:

— the United States Social Security Act

\* \* \*

*What are Not Deductible Sources of Income?*

Unum will not subtract from your gross disability payment income you receive from, but not limited to, the following:

\* \* \*

— individual disability income plans

\* \* \*

*What if Subtracting Deductible Sources of Income Results in a Zero Benefit?*

The minimum monthly payment is the greater of:

— $100; or

— 10% of your gross disability payment.

## II. STANDARD OF REVIEW

The filing of timely objections requires the Court to "make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). *See United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981). This *de novo* review, in turn, requires this Court to re-examine all the relevant evidence previously reviewed by the magistrate to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1).

"A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the Court to alleged errors on the part of the magistrate judge." *Aldrich v. Bock,* 327 F.Supp.2d 743, 747 (E.D.Mich.2004). As Judge Cleland further explained in *Aldrich:*

An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context.

\* \* \*

A general objection to the magistrate's report has the same effect as a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. The duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. *Howard v. Secretary of Health and Human Servs.,* 932 F.2d 505, 509 (6th Cir. 1991).

*Id.* at 747–48.

## III. DISCUSSION

The Report accurately explains that "[t]he basic question raised by Plaintiff in this case is whether ERISA permits a double-offset, by [two separate disability plans], of a single Social Security Disability payment." Report at 5–6. This specific question appears to be an issue of first impression for any federal court. After a thorough analysis, the Report concludes that nothing in ERISA, or in the plans, precludes the "double-offset" of Plaintiff's Social Security Benefits. Therefore, the Report recommends granting Defendants' Motions to Dismiss. For the reasons explained below, I agree and will adopt the recommendations in the Report.

## A. Count I

In support of Count I, for damages pursuant to 29 U.S.C. § 1132(a)(1)(B), Plaintiff advances three theories, each of which conveniently forms the basis for one of his objections.

### 1) Objection # 1, The Double–Offset Violates ERISA's Intent

Plaintiff argues that Congress speaks through its purpose, as well as its statutory language. He claims that Congress's intent in enacting ERISA was to "protect participants and beneficiaries." Plaintiff contends that the double-offset violates this intent, and therefore, violates ERISA. Moreover, Plaintiff claims that, although ERISA generally permits integration of benefits, any such integration must be "reasonable."

Defendants counter that ERISA permits integration of benefits, and its fundamental purpose—ensuring that employee benefit plans provide their participants and beneficiaries with the benefits their written terms promise—is served by enforcing the plain language of the plans. Moreover, Defendants note that the case upon which Plaintiff relies for the purported "reasonableness" requirement (*Dameron*) requires integration of *pension* benefits with *estimated* Social Security benefits to be reasonable (in that case, the estimated benefits were calculated so as to *always* exceed the actual amounts). They further argue that *Dameron* interprets ERISA's non-forfeiture provision, which restricts certain reductions of vested pension benefits, but is inapplicable to disability/welfare benefits.

Magistrate Judge Whalen analyzed the case law cited by Plaintiff, as well as the non-forfeiture provision of ERISA, and found that the non-forfeiture provisions were inapplicable to the Defendants' welfare plans. He concluded that "[b]ecause Plaintiff's argument that the double-offset ... violates ERISA is dependent on the applicability of the non-forfeiture clause, his statutory claim fails as a matter of law."

Although inartfully argued, Plaintiff's first objection disputes the Report's finding that the "heart of Plaintiff's argument ... lies in the non-forfeiture clause." Plaintiff first suggests that Magistrate Judge Whalen improperly limited the analysis of *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981) to cases involving the integration of pension benefits—as opposed to welfare plans, such as Plaintiff's LTD benefits. Specifically, Plaintiff contends that the *Alessi* Court expressly rejected the application of the non-forfeiture provisions of ERISA. Although Plaintiff is correct on that point, his reliance on *Alessi* is misplaced.

In *Alessi*, the Supreme Court explained that the non-forfeiture provisions of ERISA are premised on Congress's intention that a worker who was promised a *defined pension benefit* upon retirement—and who has fulfilled all conditions to vest that benefit—should receive his *vested pension benefits. Alessi*, 451 U.S. at 510, 101 S.Ct. 1895 (citing *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 375, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980)). Notably, however, the Supreme Court found that the non-forfeiture provision protects only an employee's *claim to benefits*, but "*does not guarantee a particular amount or a method for calculating the benefit.*" *Id.* at 512, 101 S.Ct. 1895 (emphasis added). Indeed, the Court explained that ERISA leaves the determination of the "level of benefits" to "the private parties, not the Government." *Id.* at 511, 101 S.Ct. 1895. *See also id.* at 525, 101 S.Ct. 1895 ("ERISA leaves integration, along with other pension calculation tech-

niques, subject to the discretion of pension plan designers."); *id.* at 526 n. 22, 101 S.Ct. 1895 (*"integration* of pension benefits with other public income maintenance funds *can be forbidden only by the terms of the pension plans themselves, or by new federal legislation."*) (emphasis added).

Plaintiff also argues that *Alessi* requires courts to look to the Congressional intent of ERISA "as a whole." He alleges, without citation to authority, that Congress "did not intend for two plans to each take the same deduction ... creating a double offset of benefits." Objection at 4. On the contrary, in *Alessi,* the Court explained that the congressional purpose of "promoting a system of private pensions by *giving employers avenues for cutting the cost of their pension obligations*" underlies the concept of permissible integration of benefits. *Id.* at 517, 101 S.Ct. 1895 (emphasis added).

In addition, the Sixth Circuit's holding in *McBarron v. S & T Industries, Inc.,* 771 F.2d 94 (6th Cir.1985) expressly limited *Alessi* to "the proposition that *pension* benefits which are clearly *vested and non-forfeitable* under ERISA may be reduced by an amount equal to Workmens' Compensation benefits received by the retiree." *Id.* at 99 (emphasis added). In *McBarron,* the plaintiff applied for disability benefits under his employer's plan. McBarron had previously been awarded workers' compensation benefits in the amount of $6.97 per week, representing a five-percent award because only five percent of his injury was found to be work-related. His employer denied his claim for disability benefits because a provision of the plan stated, "[i]f a member is entitled to ... workmen's compensation, he shall not be entitled to benefits from this plan unless and until benefits from such other program cease." *Id.* at 96. The district court, relying on ERISA's non-forfeiture provision, awarded the

plaintiff the full amount of his disability benefits, offset by his $6.97 weekly workers' compensation award. *Id.* at 96. The Sixth Circuit reversed, limiting *Alessi* (as described above) and explaining that disability benefits are not subject to the anti-forfeiture provisions of ERISA. *Id.* at 97–99. The Court also rejected the lower court's apparent desire to "produce an equitable solution," explaining that *the employer "has the absolute right to enforce its contract with the plaintiff." Id.* at 98–99 (emphasis added). The Sixth Circuit further cautioned that forcing a plan to provide benefits that were not contemplated by the fund "may endanger the stability" of the plan. *Id.* at 99. Accordingly, the Sixth Circuit reversed the district court's award of benefits and remanded for a determination of the plan's intent. Notably, both the majority and the concurring opinions recognized that a total denial of benefits based on the plaintiff's minimal workers' compensation award may be appropriate, even if seemingly inequitable. *See id.* at 98–100 ("In this case, enforcement of the contract results in *denial of disability benefits* until plaintiff stops receiving Workmen's Compensation funds."); 101 ("if the proof shows that the parties intended to *disallow all disability benefits* otherwise payable under the plan when a qualified plan member is entitled to *any* worker's compensation benefits, we must enforce that intent") (Engel, J., concurring) (emphasis added).

Under *Alessi* as limited by *McBarron,* the LTD benefits at issue in this case are not "protected" by ERISA's non-forfeiture provision. Accordingly, it is within each plan administrator's authority to determine whether Plaintiff's benefits under that plan are offset by Plaintiffs' Social Security benefits.

Having found that Defendants' integration of Plaintiff's Social Security bene-

fits is generally permissible, I next turn to Plaintiff's argument that any such integration must be "reasonable." For this premise, Plaintiff has exclusively relied on a single case—*Dameron v. Sinai Hosp. of Baltimore, Inc.*, 815 F.2d 975 (4th Cir. 1987). *Dameron*, however, rested entirely on ERISA's non-forfeiture provision. *Id.* at 979 (integration of estimated benefits "which are not reasonable calculations of actual ... benefits ... violate[s] the *non-forfeiture provisions* of ERISA.") (emphasis added); *see also id.* at 980 ("the plan's method of integrat[ion] ... violates ERISA's *nonforfeiture* requirements") (emphasis added). Because the non-forfeiture clause is inapplicable to the welfare plans at issue here, *Dameron* offers no support for Plaintiff's claim that integration of his Social Security benefits must produce a "reasonable" result.

Having thoroughly reviewed the Report, Plaintiff's Objections and Defendants' Responses thereto, and the relevant law, I agree with Magistrate Judge Whalen's conclusion that ERISA authorizes the integration of Social Security benefits with those available under an employer's disability plan, and imposes no "reasonableness" requirement on such integration. Although this resolution has harsh consequences in Plaintiff's unusual situation, the integration is a permissible method of cost containment, consistent with ERISA's purposes. Accordingly, Plaintiff's first objection is OVERRULED.

### 2) Objection # 2, The Double–Offset Violates the Intent of the Policies

Plaintiff next argues that the Court should look beyond the language of Defendants' policies, and consider the "underlying intent." He claims that the policies state that his disability benefits will be "at least 60% of his pre-disability income."

As Defendants note, however, there is no language in the plans that guarantees such an income level. Rather, the plans indicate that the *maximum* benefit is capped at the *lesser of* 60% of pre-disability earnings or the plan maximum ($10,000 for Unum; $4,000 for Minnesota Life), which is to be further reduced by deductible sources of income (including Social Security benefits). Contrary to Plaintiff's suggestion, the plans define minimums that are substantially below 60% of his income: the minimum benefit under each plan is $100 or 10% of the gross disability payment, whichever is greater.

In the Report, Magistrate Judge Whalen articulated the language of the plans, including the monthly benefit calculation, deduction of "other income benefits", and minimum-monthly benefit described above. Because courts do not have the power to redraft insurance contracts in order to "palliate the effects of considered language on the occasional hard case" (*see Padilla v. Triple–S, Inc.*, 500 F.Supp.2d 43, 48 (D.P.R.2007) (quotation omitted)), Magistrate Judge Whalen found the Court was "constrained to give effect to those provisions." He noted that "Plaintiff received the exact benefits provided for in the policies."

Plaintiff's second objection argues that the Report recognizes, but "does not give effect to the full language and intent of the Plans." Objection at 4. The Court's "paramount responsibility," he contends, is to "ascertain and effectuate the underlying intent of the policy." *Id.* at 5. Before a Court can ignore the plain language of a policy, however, there must be *an ambiguity* necessitating a choice between reasonable interpretations of the policy language. *Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 850 (6th Cir.2006). Whether the language is ambiguous is a question of law. *Id.* at 851. In this case, I have no trouble con-

cluding that "the language of the plan itself as known by the employees, or as the employees should have known" is unambiguous. *See id.* at 850. The plans expressly authorize integration of all Social Security benefits, without regard for whether any other plan integrates the same benefits. As the Sixth Circuit explained in *McBarron,* each plan "has the absolute right to enforce its contract" with Plaintiff, even if the result is harsh. *McBarron,* 771 F.2d at 98–99. Any alternative urged by Plaintiff could endanger the stability of the plans by forcing them to provide benefits not contemplated by the plans. *See id.* at 99.

Moreover, even if Plaintiff were correct, and this Court was required to evaluate the "intent" of the plans, there is nothing within the plans that expresses an intent to provide a minimum benefit of 60% of pre-disability income. Instead, the plans express a desire to contain costs by offsetting each participant's benefits by "other income" available from certain sources, including Social Security. The plans, as well as their other beneficiaries and participants are benefitted by such integration, as premiums are kept lower through a reduction of expenditures.

Plaintiff's second objection is OVER-RULED.

### 3) Objection # 3, Federal Common Law Should Be Applied to Prevent the Double–Offset

Next, Plaintiff urges the court to apply federal common law to "effectuate the purposes of ERISA." He relies exclusively on a Michigan case, *Pacific Ins. Co. v. Cordova Chemical Co. of Michigan,* No. 248778, 2005 WL 1399728 (Mich.App. June 14, 2005), the logic of which has been held inapplicable to the circumstances involved in this case. *See Grau v. Detroit Auto Inter–Ins. Exch.,* 148 Mich.App. 82, 383

N.W.2d 616 (1985). Defendants note that federal courts may not apply common law theories to alter the express terms of written benefit plans.

In the Report, Magistrate Judge Whalen concluded that "[b]ecause federal common law does not permit the alteration of an otherwise unambiguous contract provision, it provides no basis for the Plaintiff to seek relief in this case."

Plaintiff objects that the Report "refuses to apply federal common law to this case based on the assumption [that] the language of the plans is unambiguous." Objection at 6. Plaintiff contends that each plan expresses the intent to provide 60% of pre-disability income, resulting in an ambiguity when read in connection with the offset provisions. As explained above, I find no ambiguity in the plain language of the plan. Accordingly, I concur with Magistrate Judge Whalen's conclusion, and find that federal common law provides no basis for Plaintiff's relief in this case. Plaintiff's third objection is OVER-RULED.

### B. Count II

### 1) Objection # 4, Federal Common Law Should Be Applied to Prevent the Double–Offset

Alternatively, Plaintiff seeks equitable relief under 29 U.S.C. § 1132(a)(3).

Defendants note that the Supreme Court held that § 1132(a)(3) may not be used to recover money damages.

Magistrate Judge Whalen agrees with Defendants, and further explains that the Sixth Circuit holds that where a plaintiff has a claim under § 1132(a)(1)(B), which allows him to bring a lawsuit to challenge a plan administrator's denial of benefits, "he does not have a right to a cause of action ... pursuant to § 1132(a)(3)." *Wilkins v. Baptist Healthcare System, Inc.,* 150 F.3d

609, 615 (6th Cir.1998). Accordingly, Magistrate Judge Whalen recommends that Count II be dismissed.

Plaintiff objects, claiming that because the Magistrate recommends dismissal of Count I with prejudice, his 'other remedies' under § 1132(a)(1)(B) are foreclosed. Plaintiff makes this general and conclusory objection without argument or citation to any authority suggesting that the magistrate got this issue wrong. Therefore, the Court does not view Plaintiff's fourth objection as raising any objection subject to review under 28 U.S.C. § 636(b)(1). *See Slater v. Potter*, 28 Fed.Appx. 512, 513 (6th Cir.2002) ("The filing of vague, general or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object.").

Moreover, Magistrate Judge Whalen correctly concluded that the Sixth Circuit's holding in *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 615 (6th Cir. 1998) forecloses Plaintiff's remedies under 29 U.S.C. § 1132(a)(3). Report at 13. Because Plaintiff cites no authority to the contrary, his fourth objection is OVERRULED.

## IV. CONCLUSION

For the reasons set forth above, I OVERRULE Plaintiff's Objections, ADOPT Magistrate Judge Whalen's Report and Recommendation, GRANT Defendants' Motions to Dismiss, and DISMISS Plaintiff's Complaint.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION

R. STEVEN WHALEN, United States Magistrate Judge.

Before the Court are two motions to dismiss, one filed by Defendant Minnesota Life Insurance Company [Docket # 25], and one filed by Defendant Unum Life Insurance Company of America [Docket # 24]. Both have been referred for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that both Motions be GRANTED, and the Complaint DISMISSED WITH PREJUDICE.

## I. FACTS

On July 15, 2008, Plaintiff filed a five-count complaint in the Circuit Court for the County of Oakland, alleging contract and unfair trade practices claims arising out of two separate long-term disability insurance policies issued by Defendants Minnesota Life Insurance Company ("Minnesota Life") and Defendant Unum Life Insurance Company of America ("Unum"). Defendants removed the case to this Court on August 7, 2008, on the basis of diversity and federal question jurisdiction, specifically the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et. seq.* On October 29, 2008, the Court denied Defendants' motion to dismiss, and granted the Plaintiff's motion to amend the complaint. *See* Docket # 21. Plaintiff filed his amended complaint on November 12, 2008, making a claim for benefits under 29 U.S.C. § 1132(a)(1)(B) (Count I) and a claim for equitable relief under 29 U.S.C. § 1132(a)(3) (Count II). On November 21, 2008, Defendant Unum filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6) [Docket # 24], and on November 24, 2008, Defendant Minnesota Life filed a similar motion to dismiss [Docket # 25].

The essential facts are not in dispute. The Plaintiff, Arnold Isner, had long term disability ("LTD") insurance coverage with Defendant Minnesota Life, based on his employment as an agent for Minnesota Life, and a separate policy with Defendant Unum, based on his employment with Kap-

nick & Company. Plaintiff states that several years after the issuance of these policies, he became disabled as the result of Parkinson's Disease. *Amended Complaint,* ¶¶ 7–13. Plaintiff made claims for LTD benefits under both policies, and both claims were approved. Both Defendants paid Plaintiff LTD benefits in the full amount as provided under the respective policies. *Id.* ¶¶ 16–19. At a later date, Plaintiff began receiving Social Security Disability benefits of approximately $1,600 per month. *Id.* ¶¶ 20–21.

After Plaintiff began receiving Social Security Disability benefits, both Defendants reduced their LTD payments by the amount of the Social Security benefits. His benefits from Defendant Minnesota Life were reduced to approximately $1,400 per month, and his benefits from Defendant Unum were reduced to approximately $400 per month. *Id.* ¶¶ 22–23. Thus, where his combined benefits from both policies before he received Social Security benefits were approximately $5,000 per month, they now totalled $1,800, a reduction of $3,200, or twice the amount of his Social Security benefits. *Id.* ¶¶ 24–25.

In Count I of the Amended Complaint, Plaintiff makes a claim for lost benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). He claims that the double-offset of his Social Security benefits constitutes both a violation of ERISA as a matter of law, as well as a breach of the terms of the respective policies. In addition to a request that Defendants be required to pay back benefits that were wrongfully withheld, Plaintiff asks that the Court declare "that both Defendants were not entitled to deduct the entire social security benefits from Mr. Isner's long-term disability insurance payments." *Id.* ¶¶ 29–32.

In Count II, Plaintiff makes a claim for equitable relief pursuant to 29 U.S.C. § 1132(a)(3), again maintaining that it is it is unreasonable under ERISA for both Defendants to offset their LTD payments by the same amount of Social Security benefits.

Defendants have filed motions to dismiss, under Fed.R.Civ.P. 12(b)(6), arguing that the language of their respective plans permits them to offset the full amount of any Social Security disability payments.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(6)

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir.2001).

In two recent cases, the United States Supreme Court altered the standard for determining whether a complaint is subject to dismissal under Fed.R.Civ.P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Court, construing the requirements of Fed.R.Civ.P. 8(a)(2),[1] held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative

---

**1.** Rule 8(a)(2) provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

level ... on the assumption that all the allegations in the complaint are true." *Id.,* 127 S.Ct. at 1964–65 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545, 548 (6th Cir.2007). Stated differently, a complaint must "state a claim to relief that is plausible on its face." *Twombly,* at 1974.

In *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Court explained and expanded on what it termed the "two-pronged approach" of *Twombly.*[2] First, it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.,* 129 S.Ct. at 1949, citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

"Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown[n]'—'that the pleader is entitled to relief.'" 129 S.Ct. at 1950 (Internal citations omitted).

## III. ANALYSIS

■ The basic question raised by Plaintiff in this case is whether ERISA permits a double-offset, by both Defendants, of a single Social Security Disability payment. Plaintiff frames the issue as follows:

"Specifically, this action presents a legal issue of first impression in this circuit. The issue, under ERISA, is whether a plan may unreasonably integrate a plan participant's federal benefits thereby causing the participant to receive substantially less benefits than under a reasonable integration of the participant's benefits." *Plaintiff's Response, Docket # 28,* p. 3.

Integration is a method of calculating *retirement* benefit levels, described in *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 514, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), as follows:

"... [A] calculation practice under which benefit levels are determined by combining pension funds with other income streams available to the retired employees." *Id.* at 514, 101 S.Ct. 1895.

*Alessi* observed that the primary goal of ERISA is to benefit employees, and the subsidiary goal is to contain pension costs. *Id.* at 515, 101 S.Ct. 1895. Integrating Social Security and pension benefits in a way that the recipient continues to receive the established level of pension payment serves both goals. "The individual employee remains entitled to *the established pension level,* but the payments received from the pension fund are reduced by the *amount received through*" other sources, such as Social Security. *Id.* at 516, 101 S.Ct. 1895 (emphasis added).

ERISA also contains a non-forfeiture provision at 29 U.S.C. § 1053(a), which

---

**2.** *Twombly* was an antitrust case. *Iqbal* was a prisoner civil rights case. In any event, it is clear that the *Iqbal* standard is applicable to all 12(b)(6) motions.

states, "[e]ach *pension plan* shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age...." (Emphasis added). Nevertheless, ERISA expressly preserves the option of integration of pension benefits with benefits available under the Social Security Act. 29 U.S.C. §§ 1054(b)(1)(B)(iv) and (b)(1)(C), (G).

In support of his argument that any integration of Social Security benefits is subject to a test of reasonableness, the Plaintiff relies on *Dameron v. Sinai Hospital of Baltimore, Inc.*, 815 F.2d 975, 979–80 (4th Cir.1987), where the Fourth Circuit held that while 29 U.S.C. § 1054 authorizes the integration of Social Security benefits with ERISA protected retirement benefits, the calculation of benefits using integration must be reasonable. In *Dameron*, the court held that the integration with estimates of Social Security benefits "which are not reasonably related to the actual level of Social Security benefits" violates the anti-forfeiture provisions of ERISA set forth in 29 U.S.C. § 1053(a). *See also Honeysett v. Allstate Insurance Company*, 570 F.Supp.2d 994, 1002–1003 (N.D.Ill.2008) (citing Dameron) (unreasonable integration can violate ERISA's anti-forfeiture clause).

The heart of Plaintiff's argument, then, lies in the non-forfeiture clause, and if he were receiving retirement benefits, as opposed to disability (welfare) benefits, the Court would likely be presented with a question of fact as to the reasonableness of the "double integration" of Social Security benefits, because where a single Social Security payment is deducted from each of two ERISA plans, there is, from the recipient's perspective, a double offset that reduces the effective monthly benefit to an amount below the established benefit plans. *See Honeysett*, 570 F.Supp.2d at 1003 ("[A]n assessment of the reasonability of the Plan's method of calculation ... is a question of fact not appropriate for determination on this motion to dismiss").[3] In this case, for example, the combined benefit under both plans is approximately $5,000. With the double offset, his total monthly benefit is only $3,400.

However, a disability plan is a welfare benefit plan, which is statutorily excluded from both the non-forfeiture and vesting provisions of ERISA. *See* 29 U.S.C. § 1051(1). Differentiating welfare benefit plans from retirement plans, the Supreme Court in *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78, 115 S.Ct. 1223, 1228, 131 L.Ed.2d 94 (1995) noted:

"[W]e are mindful that ERISA does not create any substantive entitlement to employer-provided health benefits or any other kind of welfare benefits. Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans."

---

3. Defendants have cited *Peitrowski v. ACIA*, 65 F.Supp.2d 614 (E.D.Mich.1999), in support of their argument that it is permissible for two different insurers to offset their payable benefits with Social Security benefits. *Peitrowski* involved a Social Security offset of ERISA disability benefits and benefits payable under a no-fault automobile insurance policy. The automobile insurance offset was governed by state law. In upholding the ERISA offset, the court relied on "ERISA's broad preemptive effect over state law." *Id.* at 621. In upholding the automobile insurance offset, the court relied on Michigan's No–Fault Act, M.C.L. § 500.3109(1). *Id.* at 622. While *Peitrowski* endorsed a double set-off under these unique circumstances, it is not clear whether that case would apply to integration of Social Security benefits with two ERISA pension plans, both of which would be subject to the reasonableness standard of *Dameron*. However, given the inapplicability of ERISA's non-forfeiture provision to welfare benefits, discussed below, the Court need not resolve that question.

*See also McBarron v. S & T Industries, Inc.,* 771 F.2d 94, 98 (6th Cir.1985) ("Congress intended to allow any plan or part of a plan having disability provisions to be considered an 'employee welfare benefit plan,' and thus be exempt from the anti-forfeiture provisions"); *Lopez v. Commonwealth Oil Refining Co., Inc.,* 833 F.Supp. 86, 89 (D.Puerto Rico, 1993) ("[O]ffsetting [against Social Security benefits] does not violate the non-forfeiture provision of ERISA because the non-forfeiture provision does not apply to welfare benefit plans in the first place.").

Because Plaintiff's argument that the double-offset of Social Security benefits violates ERISA is dependent on the applicability of the non-forfeiture clause, his statutory claim fails as a matter of law. Instead, the only issue is whether the double-offset violates the express terms of either disability plan.

Each of the two disability policies in this case provides for an offset of Social Security Disability benefits. The Minnesota Life plan policy states, in pertinent part, that once the monthly benefit is calculated (essentially 60% of the employee's basic monthly earnings, not to exceed a maximum of $4,000), "other income benefits" are deducted. "Other income benefits" include:

"(E)(5) the amount of disability or retirement benefits under the United States Social Security Act ... as follows:

(a) disability benefits for which you are eligible [.]"

The Minnesota Life plan also provides that "[t]he benefit payable will never be less than $100.00 or 10% of the gross monthly benefit, whichever is greater." *See Defendant's Renewed Motion to Dismiss, Docket # 25, Exhibit B* (Certificate of Insurance).

Likewise, the Unum policy provides:

"Unum will subtract from your gross disability payment the following deductible sources of income:

(3) The amount that you receive or are entitled to receive as disability income payments under:

-the United States Social Security Act."

Thus, each plan provides for the deduction of Social Security disability payments, and a minimum level of disability benefits notwithstanding any offsets. "[C]ourts must give effect to the unambiguous terms of an ERISA plan." *Lake v. Metropolitan Life Ins. Co.,* 73 F.3d 1372, 1379 (6th Cir. 1996). In *Lake,* the Sixth Circuit upheld a disability plan provision that reduced benefits by Social Security retirement benefits that would be payable at age 62, regardless of whether the claimant was actually receiving those benefits. The court expressed some sympathy for beneficiaries who would be forced to apply for Social Security retirement benefits at age 62, thereby receiving a lower monthly amount than if they waited until age 65, but despite the apparent harshness of the result, enforced the plain terms of the plan:

"We are not unsympathetic to the plight of the Pauley Plaintiffs. As a practical matter, the carve-out for social security retirement benefits payable at age sixty-two forced the Pauley Plaintiffs to apply for these benefits. The Pauley Plaintiffs now receive lower monthly social security benefits than they would otherwise be entitled to if they had waited until age sixty-five to receive such benefits. This reduction is permanent and continues despite the fact that they no longer receive LTD benefits. Nonetheless, courts must give effect to the unambiguous terms of an ERISA plan." *Id.*

*See also Padilla v. Triple–S, Inc.,* 500 F.Supp.2d 43, 48 (D.P.R.2007) (a court

"does not have the power to redraft insurance contracts in order to 'palliate the effects of considered language on the occasional hard case.'" (Quoting *Burnham v. Guardian Life Ins. Co. of America,* 873 F.2d 486, 490–91 (1st Cir.1989))).

The double-offset of a single Social Security Disability payment is a bad deal for the Plaintiff. It is harsh. Again, if the Plaintiff were receiving an ERISA protected pension benefit rather than a welfare benefit, I would be inclined to let this case go forward under the statute's anti-forfeiture provision. But as unfair as it may seem, both plans in this case unambiguously provide for the offset, and this Court is constrained to give effect to those provisions.

Plaintiff also argues that the double-offset violated the intent of the policies, in that the actual benefits he received effectively fell below 60% of his basic salary under at least one of the policies. *Plaintiff's Response, Docket # 28,* p. 7. In so arguing, Plaintiff again confuses a disability plan with a pension plan. Under the former, the Plaintiff simply has no vested rights in a minimum defined benefit level. The plain language of the disability policies does not guarantee a payment of 60% of the base salary, but rather provides for a reduction of Social Security benefits, with a minimum benefit (10% or $100, whichever is greater, in the case of Minnesota Life) to be paid regardless of any offset. Plaintiff received the exact benefits provided for in the policies.

Plaintiff also urges this Court to apply federal common law to invalidate the double offset. Indeed, "Congress intended that the judiciary would develop and apply federal common law for ERISA claims." *Weiner v. Klais & Co.,* 108 F.3d 86, 92 (6th Cir.1997). However, "federal common law has only been 'fashion[ed] ... when it is necessary to effectuate the purposes of ERISA.'" *Tassinare v. American Nat'l Ins. Co.,* 32 F.3d 220, 225 (6th Cir.1994) (quoting *Singer v. Black & Decker Corp.,* 964 F.2d 1449, 1452 (4th Cir.1992)). The enforcement of the plain language of written plans is an important purpose of ERISA. In this regard, the Sixth Circuit in *Health Cost Controls v. Isbell,* 139 F.3d 1070, 1072 (6th Cir.1997), held:

"A primary purpose of ERISA is to ensure the integrity and primacy of the written plans. *Duggan v. Hobbs,* 99 F.3d 307, 309–10 (9th Cir.1996); *Van Orman v. American Ins. Co.,* 680 F.2d 301, 312 (3d Cir.1982). Thus, the plain language of an ERISA plan should be given its literal and natural meaning. *Burnham v. Guardian Life Ins. Co.,* 873 F.2d 486, 489 (1st Cir.1989)."

Because federal common law does not permit the alteration of an otherwise unambiguous contract provision, it provides no basis for the Plaintiff to seek relief in this case.

■ Finally, Plaintiff's claim in Count II for equitable relief under 29 U.S.C. § 1132(a)(3) must be dismissed. The Supreme Court has held that § 1132(a)(3) may not be used to recover monetary damages. *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 209–210, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002); *Varity Corp. v. Howe,* 516 U.S. 489, 512, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (§ 1132(a)(3) not available to claimants who have other remedies under § 1132). Because Plaintiff in this case may pursue, and has pursued a claim for benefits under § 1132(a)(1)(B), he is precluded from seeking equitable relief under § 1132(a)(3). In this regard, the Sixth Circuit in *Wilkins v. Baptist Healthcare System, Inc.,* 150 F.3d 609, 615 (6th Cir.1998):

"The Supreme Court clearly limited the applicability of § 1132(a)(3) to beneficiaries who may not avail themselves of § 1132's other remedies. *Varity,* 516

U.S. at 512, 116 S.Ct. 1065. Because § 1132(a)(1)(B) provides a remedy for Wilkins's alleged injury that allows him to bring a lawsuit to challenge the Plan Administrator's denial of benefits to which he believes he is entitled, he does not have a right to a cause of action for breach of fiduciary duty pursuant to § 1132(a)(3). Wilkins availed himself of the remedy available to him under the statute. The district court reviewed his claim *de novo* and concluded that LINA's denial of benefits was correct. Wilkins therefore has no cause of action under any other subsection of § 1132. *See Varity*, 516 U.S. at 515, 116 S.Ct. 1065. Consequently, he cannot recover compensatory damages for an alleged breach of fiduciary duty."

Count II must therefore be dismissed.

## IV. CONCLUSION

For these reasons, I recommend that Defendant Minnesota Life's Motion to Dismiss [Docket # 25] and Defendant Unum's Motion to Dismiss [Docket # 24] both be GRANTED, and that the Complaint be DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931

F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: September 23, 2009.